*** NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER ***

Electronically Filed
Supreme Court
SCWC-12-0000315
28-FEB-2014
11:33 AM

SCWC-12-0000315

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---

DONALD EDWARD KROG, in his capacity as Trustee of
the Donald Edward Krog Living Trust, Dated March 25, 2010,
Respondent/Plaintiff-Appellee,

vs.

ELEANA UMILANI KOAHOU and YVONNE MOKIHANA KEAHI,
Petitioners/Defendants-Appellants.

---

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000315; CIV. NO. 11-1-1697-08)

MEMORANDUM OPINION
(By: Nakayama, Acting C.J., McKenna, J.,
and Circuit Judge Nacino, in place of Recktenwald, C.J., recused,
with Acoba, J., concurring separately,
with whom Pollack, J., joins)

Respondent/Plaintiff-Appellee Donald Edward Krog, in

his capacity as trustee of the Donald Edward Krog Living Trust

(Respondent) purchased the former home of Petitioners/Defendants-

Appellants Eleana Umilani Koahou and Yvonne Mokihana Keahi

(Petitioners) from a third party following a non-judicial

foreclosure sale.  Petitioners refused to vacate the property after the sale.  Respondent filed a complaint for trespass and ejectment and a motion for summary judgment in the Circuit Court of the First Circuit (circuit court).  The circuit court granted Respondent's motion for summary judgment, entered its final judgment and writ of ejectment in favor of Respondent, and ordered Petitioners to pay Respondent damages for their trespass and wrongful possession as well as attorneys' fees and costs under the theory of assumpsit.

The Intermediate Court of Appeals (ICA) affirmed the circuit court's grant of summary judgment and award of damages and attorneys' fees and costs in a Summary Disposition Order (SDO).  Petitioners filed an application for writ of certiorari to this court challenging the damages and attorneys' fees and costs awards.  We conclude that the circuit court's award of damages was not erroneous.  However, we hold that the circuit court erred in awarding attorneys' fees and costs to Respondent because the court lacked the requisite jurisdiction to order such an award and because there was no legal justification for the award.

## I.  BACKGROUND

In 2009, Petitioners received a notice of default from MetLife Bank, N.A. (MetLife) requesting that Petitioners

2

immediately pay $6,261.06 in past due mortgage payments on their property at 1721 Akaakoa Street, Kailua, Hawaiʻi 96734 (the Property).  On November 17, 2010, MetLife recorded a notice of mortgagee's non-judicial foreclosure under power of sale.  At a public auction on January 6, 2011, Scott Kim purchased the Property for $521,000.00.  Petitioners did not challenge the foreclosure sale.

Respondent purchased the Property from Kim for $546,677.08 plus all associated costs.  Kim deeded the Property to Respondent, and escrow closed on February 18, 2011.  However, Petitioners' continued occupation of the Property prevented Respondent from taking possession.

On August 8, 2011, Respondent filed a complaint for ejectment and trespass in the circuit court.  Respondent requested the ejectment of Petitioners, damages "in an amount reflecting the reasonable value of the Property for the time [Respondent] ha[d] been deprived of possession," and costs and attorneys' fees.

On November 21, 2011, Respondent filed a motion for summary judgment arguing that there were no genuine issues of material fact regarding his possession of legal title to the Property.  In a declaration attached to his motion, Respondent stated: "[I]t is my opinion as the owner of the Property that a

3

fair and reasonable rental rate for the Property would be $2,500.00 per month."

At a hearing on December 21, 2011, the circuit court[1] granted Respondent's motion for summary judgment as to all counts contained in the complaint.  On January 26, 2012, the court entered its order granting Respondent's motion and concluding that Respondent was the owner of the Property.

On February 17, 2012, Petitioners filed a motion for stay pending appeal to the ICA.  Petitioners also stated that "[s]hould the Court require the posting of a supersedeas bond, said bond should be based upon the reasonably certain damages for delay that Plaintiff would incur by being deprived in the future of possession of the property during the pendency of this appeal."  (Emphasis omitted).  To aid in the calculation of these damages, Petitioners filed a declaration from real estate broker Neil Sauvage stating that his "professional rental valuation establish[ed] the fair monthly rental value of the property to be $2,200 to $2,400 per month."

On March 5, 2012, Respondent filed a memorandum in opposition to the motion for a stay and additionally argued that he was entitled to an award of attorneys' fees and costs.  In that motion, Respondent contended that Petitioners' proposed

---

[1]    The Honorable Karl K. Sakamoto presided.

supersedeas bond was insufficient because, as the prevailing party, Respondent was entitled to an award of attorneys' fees and costs pursuant to HRS § 667-33(c) (Supp. 2011).[2] Respondent stated, "Although [Respondent] has not yet filed his motion for an award of attorneys' fees and costs, the language of the statute makes it clear that such an award is mandatory." (Emphasis added).

In their reply memorandum to the motion for a stay, filed March 9, 2012, Petitioners argued that Respondent was not entitled to an award of attorneys' fees because this was not an action in assumpsit and HRS chapter 667 was similarly inapplicable.

On March 9, 2012, the circuit court entered its final judgment in favor of Respondent and against Petitioners. The circuit court concluded that Respondent was the owner of the

---

[2]     HRS § 667-33(c) provided then, as it does now:

The mortgagor and any person claiming by, through, or under the mortgagor and who is remaining in possession of the mortgaged property after the recordation of the affidavit and the conveyance document shall be considered a tenant at sufferance subject to eviction or ejectment. The purchaser may bring an action in the nature of summary possession under chapter 666, ejectment, or trespass or may bring any other appropriate action in a court where the mortgaged property is located to obtain a writ of possession, a writ of assistance, or any other relief. In any such action, the court shall award the prevailing party its reasonable attorney's fees and costs and all other reasonable fees and costs, all of which are to be paid for by the non-prevailing party.

(Emphasis added).

Property and ordered Petitioners to pay Respondent "$26,400 as damages for their trespass and wrongful possession of the Property from February 18, 2011 through December 21, 2011" and an additional $2,400 a month until Petitioners returned possession of the Property to Respondent. The circuit court also issued a writ of ejectment against Petitioners.

On March 13, 2012, the circuit court held a hearing on Petitioners' motion for a stay. During the hearing, the circuit court denied Petitioners' motion. The circuit court also stated that Petitioners' proposed supersedeas bond of monthly payments of $2,400 was insufficient and that attorneys' fees and costs should be included in the calculation. Petitioners responded by reiterating their argument that there was no contractual or statutory basis for the award of attorneys' fees and costs. Respondent stated: "[W]e'll be separately filing a motion for an award of attorney's fees and costs. We believe there's substantial case law that says in actions of this nature, in the nature of ejectment, that attorney's fees and costs are awardable." (Emphasis added).

By minute order of March 14, 2012, the circuit court set the supersedeas bond at the amount of damages already awarded ($26,400), plus rental income for one year ($28,800), plus Respondent's attorneys' fees and costs incurred from the

6

initiation of litigation to the entry of final judgment.  The circuit court ordered Respondent's counsel to "turn over the information necessary to compute the attorneys' fees and costs component of the supersedeas bond."  (Capitalization omitted).

On March 23, 2012, Respondent filed a memorandum regarding the calculation of the supersedeas bond in which he calculated that he had incurred $38,733.50 in attorneys' fees and $2,775.52 in costs.

On March 29, 2012, Petitioners filed their notice of appeal to the ICA.

The circuit court did not enter its order awarding Respondent $40,558.62 in attorneys' fees and $968.87 in costs until April 27, 2012.  This order also denied Petitioners' February 17, 2012 motion for a stay pending appeal.

On appeal to the ICA, Petitioners argued that the circuit court had erred in (1) granting Respondent's motion for summary judgment despite genuine issues of fact, (2) awarding damages without a valid legal or evidentiary basis, and (3) awarding attorneys' fees and costs where Respondent failed to timely file a motion for attorneys' fees and costs.

In its brief SDO, the ICA concluded that Petitioners' appeal was without merit and affirmed the circuit court's orders granting summary judgment and final judgment in favor of

7

Respondent.  Krog v. Koahou, CAAP-12-0000315, 2013 WL 2149717, at *1 (App. May 17, 2013) (SDO).

On August 21, 2013, Petitioners filed an application for writ of certiorari with this court arguing that the ICA erred in affirming the circuit court's award of damages and attorneys' fees and costs.

## II.  DISCUSSION

### A.    The circuit court's award of damages to Respondent was not clearly erroneous

In its final judgment, the circuit court awarded Respondent damages due to Petitioners' "trespass and wrongful possession of the Property."  "As in other tort actions, the general rule is that the measure of damages in trespass actions is such sum as will compensate the person injured for the loss sustained, or for damages that have occurred or can with certainty be expected to occur."  87 C.J.S. Trespass § 132 (2013) (footnotes omitted).  Damages are calculated as "the sum necessary to make the victim whole," including damages for "loss of use of the property."  Id.; see also Smith v. Bottomley, 30 Haw. 853, 858 (Haw. Terr. 1929) ("'A wrongdoer is answerable for all the injurious consequences of his tortious act' . . . [including] the value of the use and occupation of which the lessors have been wrongfully deprived." (quoting Bergquist v.

8

Kreidler, 196 N.W. 964, 965 (Minn. 1924))). Damages may also be awarded in an ejectment suit "for all lost profits and damages allegedly sustained by the plaintiff due to the defendant's wrongful possession of the property in question." 25 Am. Jur. 2d Contracts § 50 (2013).

Upon the grant of summary judgment and the issuance of the writ of ejectment, Respondent was entitled to damages equal to the value of the use of the Property of which he had been deprived. The trial court's calculation of the value of Respondent's loss of use of the Property is a finding of fact that will not be disturbed unless it is clearly erroneous. Allstate Ins. Co. v. Ponce, 105 Hawaiʻi 445, 453, 99 P.3d 96, 104 (2004). Findings of fact are "clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed." Id.

The circuit court calculated damages of $2,400 for each month in which Petitioners maintained possession of the Property. Accordingly, the court awarded Respondent $26,400 for the eleven months in which Petitioners had wrongfully possessed the Property, and additional damages calculated on a per diem basis of $2,400 per month until Petitioners returned possession of the property to Respondent. The court apparently derived this value

9

from the declarations submitted by Respondent and Petitioners. In his declaration, Respondent stated that a reasonable rental rate for the Property would be $2,500.00 per month. The declaration Petitioners submitted from real estate broker Neil Sauvage stated that "the fair monthly rental value of the property [was] $2,200 to $2,400 per month."

The admission of opinion evidence is within the discretion of the trial court and will only be reversed for abuse of discretion. State v. Bermisa, 104 Hawaiʻi 387, 392, 90 P.3d 1256, 1261 (2004). Opinions of lay witnesses are admissible when they are "rationally based on the perception of the witness, and . . . helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Hawaiʻi Rules of Evidence (HRE) Rule 701. This court has held that "[a]n owner, by virtue of his ownership and consequent familiarity with the land and real estate market, is generally held to be qualified to give his opinion as to the value of his land." City & Cnty. of Honolulu v. Int'l Air Serv. Co., 63 Haw. 322, 332, 628 P.2d 192, 200 (1981) (holding that the trial court did not abuse its discretion in excluding the opinion testimony of an officer of a corporate owner because that opinion was of less probative value than that of an individual owner).

Respondent's evidence regarding the rental value of his

10

property was based upon his knowledge of the area and his status as the owner of the Property.  His opinion appears to have been "rationally based" on his perceptions and helpful to the court's calculation of damages.  Additionally, as noted by Respondent, the damages calculated by the circuit court actually fell within the range of values presented in the declaration submitted by Petitioners, rather than that of Respondent.

The circuit court's calculation of damages, based upon the declarations submitted by Respondent and Petitioners, was not a clearly erroneous estimation of the loss of use value suffered by Respondent due to Petitioners' trespass upon his property.

**B.  The circuit court erred in awarding attorneys' fees and costs to Respondent**

1.  <u>Jurisdiction</u>

The circuit court lacked jurisdiction to award Respondent attorneys' fees subsequent to Petitioners' filing of the notice of appeal because Respondent failed to file a motion for the award of fees.  The filing of motions for the award of attorneys' fees and costs is governed by Hawaiʻi Rules of Civil Procedure (HRCP) Rule 54(d)(2):

> Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial. . . . Unless otherwise provided by statute or order of the court, <u>the motion must be filed and served no later than 14 days after entry of an appealable order or judgment</u>; must specify the judgment and the statute, rule, or other grounds entitling

11

> the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.

(Emphasis added). Additionally, pursuant to HRCP Rule 7(b), a motion may be made orally during a hearing:

> An application to the court for an order <u>shall be by motion which, unless made during a hearing or trial, shall be made in writing</u>, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(Emphasis added).

In construing statutes or rules, "'laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.'" <u>Aloha Care v. Ito</u>, 126 Hawaiʻi 326, 349, 271 P.3d 621, 644 (2012) (alterations omitted) (quoting HRS § 1-16 (1993)). And, "[w]hen faced with 'a plainly irreconcilable conflict between a general and a specific statute concerning the same subject matter,' this court invariably favors the specific." <u>Kinkaid v. Bd. of Review of City & Cnty. of Honolulu</u>, 106 Hawaiʻi 318, 323, 104 P.3d 905, 910 (2004) (some internal quotation marks omitted) (quoting <u>Metcalf v. Vol. Emps. Ben. Ass'n of Haw.</u>, 99 Hawaiʻi 53, 59, 52 P.3d 823, 829 (2002)). Applying this principle to HRCP Rules 7(b) and 54(d)(2)(A), it is apparent that HRCP Rule 54(d)(2)(A) sets specific requirements for the filing and serving of motions for attorney fees and is the controlling rule. Pursuant to HRCP Rule 54(d)(2)(A), a motion for attorneys' fees must be <u>filed and served</u> no later than

12

14 days after entry of the judgment, must <u>specify the judgment and the statute, rule, or other grounds entitling the award</u>, and must <u>state the amount</u> or provide a fair estimate of the amount sought.

In Respondent's opposition to Petitioners' motion for a stay, and during argument, Respondent stressed that he "<u>had not yet</u>" and that he <u>would be</u> filing a motion for attorneys' fees and costs. Respondent himself did not intend his brief justifications for the award of attorneys' fees in his March 5, 2012 memorandum in opposition to Petitioners' motion for a stay, or his discussion of attorneys' fees and costs during the March 13, 2012 hearing, to constitute the requisite "motion" for attorneys' fees and costs. Instead, Respondent was simply presenting arguments to justify the inclusion of attorneys' fees in the calculation of a supersedeas bond. Additionally, Respondent's March 23, 2012 memorandum regarding the award of attorneys' fees and costs cannot constitute a motion of attorneys' fees and costs because it was filed after the circuit court's March 14, 2012 minute order awarding attorneys' fees and costs to Respondent.

Respondent's memorandum in opposition to Petitioners' motion for a stay and his arguments during the March 13, 2012 hearing also fail to meet HRCP Rule 54(d)(2)(A)'s requirements

13

for a motion for attorneys' fees and costs.  Respondent's memorandum was filed four days prior to the court's entry of judgment on March 9, 2012; therefore it could not identify the judgment on which the award was based.  Respondent's opposition also identified HRS § 667-33(c) as the grounds for the award and made no mention of assumpsit, which was the basis of the circuit court's award.  During the March 13, 2012 hearing, Respondent argued that the award of attorneys' fees and costs was justified under the theory of assumpsit, but Respondent failed to "state the amount or provide a fair estimate of the amount sought," as required under HRCP Rule 54(d)(2)(A).  Respondent also failed to identify the judgment on which the award of attorneys' fees and costs was based.

Because Respondent did not file a timely motion for attorneys' fees and costs prior to the filing of the notice of appeal, the circuit court was without jurisdiction to enter an award of attorneys' fees and costs subsequent to the filing of the notice of appeal.  "The notice of appeal shall be deemed to appeal the disposition of all post-judgment motions that are timely filed after entry of the judgment or order."  HRAP Rule 4(a)(3).  "Generally, the filing of a notice of appeal divests the [circuit] court of jurisdiction over the appealed case."  TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 265, 990 P.2d 713,

14

735 (1999). The circuit court only "retains jurisdiction to determine matters collateral or incidental to the judgment, and may act in aid of the appeal." Id. Therefore, the circuit court's April 27, 2012 order awarding attorneys' fees and costs to Respondent is void for lack of jurisdiction.

2. Assumpsit

Aside from the circuit court's lack of jurisdiction to award Respondent attorneys' fees and costs, the award was also erroneous because the circuit court based the award on a misapplication of the theory of assumpsit.[3] Hawaiʻi follows the American Rule, which provides that "'each party is responsible for paying for his or her own litigation expenses'" except where "'provided for by statute, stipulation, or agreement.'" Ranger Ins. Co. v. Hinshaw, 103 Hawaiʻi 26, 31, 79 P.3d 119, 124 (2003) (quoting TSA Int'l Ltd., 92 Hawaiʻi at 263, 990 P.2d at 734). While a prevailing party generally may not recover attorneys' fees and costs for an action brought under common law tort theories, HRS § 607-14 (Supp. 2011) provides for the recovery of attorneys' fees and costs for actions brought under the theory of assumpsit. Pursuant to HRS § 607-14,

---

[3]     While the question of whether the circuit court erred in awarding Respondent attorneys' fees and costs under the theory of assumpsit is moot, we address this issue, and the applicability of HRS § 667-33(c), to assist the trial court on remand.

15

> In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

(Emphasis added). "[F]or purposes of HRS § 607-14, the party in whose favor judgment was entered is the prevailing party." Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai&#39;i 92, 120, 176 P.3d 91, 121 (2008).

Hawaii's courts have long recognized the common law theories of assumpsit and tenancy at sufferance. "'[A]ssumpsit' is 'a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations.'" Blair v. Ing, 96 Hawai&#39;i 327, 332, 31 P.3d 184, 189 (2001) (quoting TSA Int'l Ltd., 92 Hawai&#39;i at 264, 990 P.2d at 734). Under the theory of tenancy at sufferance, the tenant is liable in assumpsit to pay a "fair value of the premises for use and occupation." Lawer v. Mitts, 238 P. 654, 660 (Wyo. 1925) ("'[A] tenant at sufferance, occupying by permission of the landlord, was liable, upon an implied contract, in assumpsit for use and occupation of the premises.'" (quoting Merrill v.

16

Bullock, 105 Mass. 486, 490 (1870))).  A tenancy at sufferance is created "'[w]hen the tenant, whose term has expired by efflux of time, instead of quitting the premises, as he ought to do, remains in possession, holding over as it is called.'" Schimmelfennig v. Grove Farm Co., 41 Haw. 124, 134 (Haw. Terr. 1955) (alterations in original) (quoting Decker v. Adams, 12 N.J.L. 99, 100 (1830)).  Where the tenant's continuing occupation is tortious, the tort may be waived and the property owner may bring an action in assumpsit.  See Fountain v. Mackenzie, 32 Haw. 45, 49 (Haw. Terr. 1931) ("The rule is firmly established that the tort may be waived and an action of contract brought in all cases where the law implies a promise on the part of the wrongdoer to reimburse the party injured by his act."); see also Herond v. Bonsall, 140 P.2d 121, 123 (Cal. Dist. Ct. App. 1943) ("An action will lie for recovery of the reasonable value of the use and occupation of real property irrespective of the question of whether or not the use thereof by the occupant was tortious or wrongful.  In such a case the tort, if any, may be waived and an action based upon implied assumpsit is maintainable to recover the value of the use of the real property for the time of such occupation . . . .")

While a tenancy at sufferance gives rise to an action in assumpsit, courts in this and other states have recognized the

17

common law rule that, where there is no landlord tenant
relationship, there can be no tenancy at sufferance and no action
in assumpsit.  See Merrill, 105 Mass. at 490 ("At common
law . . . [if] the facts would not warrant the inference that
[the tenant] ever occupied the premises by contract, express or
implied, with the owner, but showed that he asserted an adverse
title, he was not liable to such an action."); Smith v. Stewart,
6 Johns. 46, 48 (N.Y. 1810) (concluding that where a buyer and
seller entered into a contract for the sale of property and the
buyer took possession of the property but failed to complete the
purchase, the seller could bring an action for trespass and
ejectment, but not for assumpsit because there was no landlord
tenant relationship between the parties).  In Fountain, the
plaintiff brought an action for the recovery of the reasonable
value of the use and occupation of a property in Honolulu.  32
Haw. at 45-46.  The defendant alleged that her occupation of the
property was "under a claim of right and exercised in good fath."
Id. at 46.  The Supreme Court of the Territory of Hawaiʻi
reasoned that an action in assumpsit could be brought only where
there existed an express or implied contract.  Id. at 49.  The
court stated:

> "[W]henever the action of assumpsit for use and occupation
> has been allowed, it has been founded and would seem
> necessarily to be founded upon contract either express or
> implied.  The very term assumpsit presupposes a

18

> contract. . . . <u>To maintain the action for use and occupation, therefore, there must be established the relation of landlord and tenant, a holding by the defendant under a knowledge of the plaintiff's title or claim, and under circumstances which amount to an acknowledgment of, or acquiescence in, such title or claim, and an agreement or permission on the part of the plaintiff.</u> The action will not lie where the possession has been acquired and maintained under a different or adverse title, or where it was tortious and makes the holder a trespasser."

<u>Id.</u> (emphasis added) (quoting <u>Lloyd v. Hough</u>, 42 U.S. 153, 158 (1843)). The court concluded that because "there was no implied contract on the defendant's part to pay for the use and occupation of the premises" there could be no action in assumpsit. <u>Id.</u>

Here, Petitioners' continuing occupation of the Property after its sale to Respondent did not create a tenancy at sufferance. Petitioners never occupied the Property as tenants and there never existed a landlord tenant relationship between Petitioners and Respondent. Additionally, Petitioners' continuing occupation of the Property did not create an implied promise to pay Respondent for the use of the Property where Petitioners maintained that they were the owners of the Property.

Respondent brought this suit pursuant to tortious trespass and sought ejectment; Respondent may not now claim that this is a suit in assumpsit in order to recover attorneys' fees and costs. To determine whether the action is in the nature of assumpsit "'this court has looked to the essential character of

19

the underlying action in the trial court.'" Blair, 96 Hawai'i at 332, 31 P.3d at 189 (quoting Leslie v. Estate of Tavares, 93 Hawai'i 1, 5, 994 P.2d 1047, 1051 (2000)). "The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought." Id. (quoting Helfand v. Gerson, 105 F.3d 530, 537 (9th Cir. 1997)). This court will determine that an action arises in assumpsit when "the actual factual allegations are such that historically the action would have been brought in assumpsit." Leslie, 93 Hawai'i at 5, 994 P.2d at 1051 (quoting Helfand, 105 F.3d at 537).

Respondent's original complaint sounded in tort, alleging trespass and seeking the ejectment of Petitioners. Respondent stated that he was the rightful owner of the Property and that after he had taken possession of the Property, Petitioners entered and remained on the Property. Respondent did not claim any contractual relationship with Petitioners and specifically stated that "there [was] no contractual or statutory relationship" between Petitioners and him. This action does not arise from any contractual claims and therefore an award of attorneys' fees and costs is not justified under the theory of assumpsit.

20

3.    HRS § 667-33(c)

The award of attorneys' fees and costs was also not justified under HRS § 667-33(c), which provides limited grounds for the award of attorneys' fees and costs following non-judicial foreclosure sales.  In 1998, Hawaiʻi enacted non-judicial foreclosure laws -- HRS chapter 667, "Foreclosure by Action or Foreclosure by Power of Sale" -- "to streamline the foreclosure process by setting up a non-judicial foreclosure system which a lender can utilize to foreclose on a property without having to file a lawsuit and obtain court supervision."  1998 House Journal, at 365 (statement of Rep. Menor).  A provision of this chapter modified the common law rules regarding tenancy at sufferance and expanded the circumstances in which a prevailing party may recover attorneys' fees and costs:

> The mortgagor and any person claiming by, through, or under the mortgagor and who is remaining in possession of the mortgaged property after the recordation of the affidavit and the conveyance document shall be considered a <u>tenant at sufferance</u> subject to eviction or ejectment.  The purchaser may bring an action in the nature of summary possession under chapter 666, ejectment, or trespass or may bring any other appropriate action in a court where the mortgaged property is located to obtain a writ of possession, a writ of assistance, or any other relief.  <u>In any such action, the court shall award the prevailing party its reasonable attorney's fees and costs and all other reasonable fees and costs, all of which are to be paid for by the non-prevailing party.</u>

HRS § 667-33(c) (Supp. 2011) (emphasis added).

In interpreting a statute, this court follows established rules:

21

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

Dejetley v. Kahoʻohalahala, 122 Hawaiʻi 251, 262, 226 P.3d 421, 432 (2010) (quoting Rees v. Carlisle, 113 Hawaiʻi 446, 452, 153 P.3d 1131, 1137 (2007)).

Here, the plain language of the statute indicates that where a mortgagor remains in possession of a property following a non-judicial foreclosure sale, the "purchaser" may bring an action for ejectment or trespass and the prevailing party shall receive attorney's fees and costs, in addition to damages. The term "purchaser" is undefined in HRS chapter 667. However, we may look to the language in other statutes upon the same subject matter to construe the meaning of "purchaser." See HRS § 1-16 (2009).

The first use of the term "purchaser" in HRS chapter 667 occurs in HRS § 667-31(a) (Supp. 2011): "After the purchaser completes the purchase by paying the full purchase price and the costs for the purchase, the mortgaged property shall be conveyed to the purchaser by a conveyance document." (emphasis added).

22

From this use of the term, it appears that in HRS chapter 667 "purchaser" refers specifically to the party who purchases the mortgaged property at the non-judicial foreclosure sale. Therefore, HRS § 667-33(c) permits to party who purchases a property at a non-judicial foreclosure sale to collect attorneys' fees and costs after prevailing in an ejectment or trespass action.

While HRS § 667-33(c) provides for the original purchaser of a property to collect attorneys' fees in an ejectment or trespass action, it is inconsistent with the legislative purpose of this statute to extend the attorneys' fees provision to all subsequent purchasers. The purposes of simplifying and expediting the foreclosure process are not furthered by permitting any purchaser to collect otherwise unrecoverable attorneys' fees and costs from a trespasser, if the trespasser was formerly a mortgagor of the property, dispossessed through the non-judicial foreclosure process.

Applying HRS § 667-33(c) to this case, it appears that had the original purchaser of the Property (Scott Kim) prevailed in a suit for trespass and ejectment against Petitioners, Kim would been entitled to the recovery of attorneys' fees and costs. However, HRS § 667-33(c) is not directly applicable to the present situation in which Respondent, a third-party purchaser

23

having no direct relationship to Petitioners, prevailed in a suit for trespass and ejectment. Therefore, HRS § 667-33(c) does not provide a statutory basis for the circuit court's award of attorneys' fees and cost.

### III. Conclusion

The circuit court lacked jurisdiction to award Respondent attorneys' fees and costs and, furthermore, there was no legal justification for the award of attorneys' fees and costs. The supersedeas bond set by the circuit court was also erroneous in that it included the attorneys' fees and costs the circuit court awarded Respondent. Accordingly, we vacate the circuit court's award of attorneys' fees and costs and the circuit court's order regarding the supersedeas bond and we remand this case to the circuit court for further proceedings.

DATED: Honolulu, Hawaiʻi, Febrtuary 28, 2014.

| | |
|---|---|
| Gary Victor Dubin, Frederick J. Arensmeyer and Zeina Jafar for petitioners | /s/ Paula A. Nakayama |
| | /s/ Sabrina S. McKenna |
| | /s/ Edwin C. Nacino |
| Theodore D.C. Young and Andrew G. Odell, and Wayne Nasser, Kevin W. Herring, and Steven R. Gray for respondent | |



24